IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE
February 10, 2010 Session

## DEBRA M. BARKES ET AL. v. RIVER PARK HOSPITAL, INC.

**Circuit Court for Warren County**
**No. 946**

---

**No. M2006-01214-SC-R11-CV**

---

**OPINION ON THE PETITION FOR REHEARING - Filed November 30, 2010**

SHARON G. LEE, J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, and GARY R. WADE, JJ., joined. WILLIAM C. KOCH, JR., J., not participating.

River Park Hospital has filed a Tenn. R. App. P. 39 petition for rehearing requesting this Court to reconsider its opinion filed on October 20, 2010. We have carefully reviewed the entire record and appellate briefs, from all of which we conclude that our opinion addressed and considered all issues raised by River Park in its appeal.

In its petition for rehearing, River Park advances two primary arguments. First, River Park asserts that this Court's opinion failed to address the issue of whether the jury's verdict was inconsistent and irreconcilable. Second, River Park argues that the Court's opinion failed to address the situation where a hospital could be found liable when none of the individual health care providers were found to have committed medical malpractice. These two arguments essentially address the same point – can a hospital be liable to its patients for breach of its duty of care absent any liability of other health care providers? We answered this question in the affirmative based on prior well-settled precedent in Tennessee.

We held that a hospital has a duty to its patients to exercise that degree of care, skill, and diligence used by hospitals generally in its community. We relied on prior Tennessee decisions that permitted direct negligence actions against a hospital for failing to exercise

1

reasonable care in discharging duties owed directly to patients. Because of this direct duty of care, a hospital may be directly liable to a patient independent of any vicarious liability of its employees. Thus, a hospital can be negligent for failing to enforce its policies and procedures in patient care absent a finding that other health care providers were also negligent. It necessarily follows then that a verdict finding River Park liable for breaching its duty of care to Mr. Barkes by, among other things, failing to enforce its policy that all patients seen in the emergency room will be seen by an appropriate physician is not inconsistent and irreconcilable with a verdict finding that other health care providers who treated Mr. Barkes did not deviate from the standard of care they owed to Mr. Barkes.

We carefully reviewed the record to ensure that the verdict was supported by material evidence. We found that it was. The jury verdict was supported by proof from which it could be reasonably concluded that the negligence and the resulting injury to Mr. Barkes resulted from an institutional failure that was, in essence, managerial and administrative in nature. The hospital developed rules and policies designed to ensure that its patients receive quality care, as is required in order to obtain and maintain accreditation by the Joint Commission on Accreditation of Healthcare Organizations and to comply with the standard of care applicable to its patients. A hospital's responsibility to administer and oversee the activities of its emergency department includes a duty to create and maintain effective lines of communication to health care providers practicing within its walls in order to ensure that they are aware of and following the hospital's policies and procedures. The administration of the hospital is also responsible for implementing an effective system of oversight to enforce its policies.

River Park again urges us to follow the ruling of Gafner v. Down East Community Hospital, 735 A.2d 969 (Me. 1999), relied on by the Court of Appeals in this case. No other court outside of Maine has relied on and followed Gafner in the eleven years since it was decided, and we do not find Gafner's reasoning to be persuasive. Maine appears to be the lone state, or very nearly so, which has refused to recognize a theory of direct liability for hospitals. The great majority of courts in our sister states that have considered the issue have recognized some form of the direct liability theory of negligence. See Strubhart v. Perry Mem'l Hosp. Trust Auth., 903 P.2d 263, 269 (Okla. 1995) (noting that "[i]n recent years other jurisdictions deciding the question have virtually unanimously adopted some form of this theory . . . based on an independent duty of the institution itself owed directly to patients").[1]

---

[1] See also, e.g., Fletcher v. S. Peninsula Hosp., 71 P.3d 833, 842 (Alaska 2003); Tucson Med. Ctr., Inc. v. Misevch, 545 P.2d 958, 960 (Ariz. 1976) (en banc); Elam v. College Park Hosp., 183 Cal. Rptr. 156, 158-65 (Cal. Ct. App. 1982); Kitto v. Gilbert, 570 P.2d 544, 550 (Colo. Ct. App. 1977); Insinga v. LaBella, 543 So.2d 209, 214 (Fla. 1989); Mitchell County Hosp. Auth. v. Joiner, 189 S.E.2d 412, 414 (Ga. 1972);

Our recognition of a theory of direct liability does not result in the imposition of strict liability against hospitals for injuries suffered by its patients, nor will it make hospitals a guarantor of patients' health irrespective of individual negligence or force hospitals to regulate the medical decisions of doctors practicing in the hospital. Well-established principles of negligence are applicable to actions alleging a theory of direct liability. See Blanton v. Moses H. Cone Mem'l Hosp. Inc., 354 S.E.2d 455, 457 (N.C. 1987) (noting that "what has been called corporate negligence . . . is no more than the application of common law principles of negligence and is not some recently developed doctrine upon which liability is based"). The theory of direct liability is not a new concept, for as we have noted, Tennessee courts have long recognized that hospitals owe certain duties of care to patients that come to them for treatment and healing.

Accordingly, the petition for rehearing is respectfully denied and the costs of this petition are taxed to River Park Hospital, Inc., d/b/a River Park Hospital, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

---

Darling v. Charleston Cmty. Mem'l Hosp., 211 N.E.2d 253, 258 (Ill. 1965); Ferguson v. Gonyaw, 236 N.W.2d 543, 550 (Mich. Ct. App. 1975); Larson v. Wasemiller, 738 N.W.2d 300, 305 (Minn. 2007); Gridley v. Johnson, 476 S.W.2d 475, 483-85 (Mo. 1972); Foley v. Bishop Clarkson Mem'l Hosp., 173 N.W.2d 881, 884 (Neb. 1970); Oehler v. Humana Inc., 775 P.2d 1271, 1272 (Nev. 1989); Corleto v. Shore Mem'l Hosp., 350 A.2d 534, 537-38 (N.J. Super. Ct. Law Div. 1975); Raschel v. Rish, 488 N.Y.S.2d 923, 925 (N.Y. App. Div. 1985); Blanton v. Moses H. Cone Mem'l Hosp., Inc., 354 S.E.2d 455, 457-58 (N.C. 1987); Benedict v. St. Luke's Hosps., 365 N.W.2d 499, 504 (N.D.1985); Strubhart, 903 P.2d at 275-76; Thompson v. Nason Hosp., 591 A.2d 703, 707-08 (Pa. 1991); Pedroza v. Bryant, 677 P.2d 166, 170 (Wash. 1984) (en banc); Utter v. United Hosp. Ctr., Inc., 236 S.E.2d 213, 215-16 (W. Va. 1977); Johnson v. Misericordia Cmty. Hosp., 301 N.W.2d 156, 164 (Wis. 1981).

3